WILLIAM D., The (BICKNER v.). See Case No. 1,390.

## Case No. 17,691.

### The WILLIAM D. RICE.

[3 Ware, 134;[1] 10 Law Rep. 501.]

District Court, D. Massachusetts. Nov., 1857.

ADMIRALTY JURISDICTION — EQUITABLE TITLE TO VESSELS.

A court of admiralty has no jurisdiction to try questions of equitable title to vessels. or to enforce the equities between mortgagor and mortgagee of vessels; it can only pass upon the legal title.

[Cited in Morgan v. Tapscott. Case No. 9.808; The C. C. Trowbridge, 14 Fed. 876; Wenberg v. Cargo of Mineral Phosphate, 15 Fed. 288; The Ella J. Slaymaker, 28 Fed. 768.]

In admiralty.

S. J. Gordon, for libellant.

B. R. Curtis and C. E. Pike, for claimants.

WARE, District Judge. This is a libel for the possession of the brig William D. Rice. The libellant alleges that he is the true owner, and formerly had, and ought still to have, the possession. But the brig is now in the possession of Simeon M. Mitchell and Nathaniel Heath, claiming title under a pretended sale by one Edwin H. Rice. in fraud of the libellant. The libellant deduces his title from Edwin H. Rice. It is alleged that while the brig was on the stocks, Rice, the builder and owner, on the 15th of August, 1856. mortgaged the vessel to the said Simeon M. Mitchell, George S. Chaloner and Frost Warren, in trust to secure the payment of a note to Nicholas Mason, of $2125; that Mason, in October following, assigned all his right and interest in said note and mortgage to the libellant; that afterwards two of the trustees. Chaloner and Warren, on the 6th of April, 1857. assigned the note and mortgage to the libellant, but that Mitchell fraudulently concealed the note and refused to join in executing the assignment of the mortgage; that on the 1st of November. the libellant appointed Mason his attorney, with power of substitution, to collect the note and foreclose the mortgage; that Mason, March 7th. substituted Wm. A. Richardson, who. with the knowledge and consent of the libellant, took possession of the vessel then on the stocks. and foreclosed the mortgage. In July. after the foreclosure, Rice. with Mitchell and others. it is alleged. launched the vessel against the will of the libellant. and Heath fraudulently procured for the brig a register under her present name (after she had been registered under the name of David Ransom. in another port), under pretended claim of ownership on the part of Heath. The libel concluded with a prayer that the brig may be delivered to the libellant. and for such further relief as to law and justice appertain. To this libel exceptions are filed by the claimants in substance: 1st. That the libel does not show a title in Ransom, nor that he is entitled to the possession. 2d. That this court has not juris-

1 [Reported by George F. Emery. Esq.]

diction to try the question whether the mortgage has been foreclosed. 3d. That the court has not jurisdiction to try the question whether Ransom has an equitable title, and to enforce the same. No right of possession is claimed by the libel independent of the right of property. The court is therefore called upon to determine whether the title is in the libellant as preliminary to the delivery of possession.

That courts of admiralty in this country have authority to pronounce on the title of vessels is, I suppose, too well established to be questioned. But when this is said, it is the legal title only that is meant. Mason's assignment to Ransom of all his right and interest in the note to him and the mortgage to trustees for his security, did not give him a legal title to the vessel. It gave him only a right to have that interest which Mason had transferred by the trustees, and that interest was not an absolute title, but only a title in mortgage. But the assignment of the mortgage by two of the trustees only was wholly inoperative. It transferred nothing. Wilber v. Almy, 12 How. [53 U. S.] 120; 2 Story, Eq. §§ 1230, 1231. It is alleged that the third trustee fraudulently refused to join in the assignment; but if so, I take it to be quite clear, that the court has no authority to compel him to join. The power to compel a specific performance of a contract in the execution of a trust is within the peculiar and exclusive jurisdiction of courts of equity. A court of admiralty has no such power. This article does not show any such interest in the vessel as will enable a court of admiralty to take jurisdiction of the case.

The libel then sets out another title, that the libellant has the proprietary interest in the brig under a foreclosed mortgage. In the case of Bogart v. The John Jay, 17 How. [58 U. S.] 399, it was decided that a court of admiralty had not jurisdiction to order the sale of a mortgaged vessel to pay the mortgage debt, nor to foreclose the mortgage by a decree, and transfer the property and possession to the mortgagee. In that case the vessel was mortgaged by the purchaser to secure the payment of the purchase-money. The libel contained two prayers for relief. The first was for a decree for the payment of the unpaid purchase-money, and that the vessel, with her equipments, might be condemned to pay the same. This would have been the proper prayer if the mortgage had been a maritime hypothecation. The second was that the steamer might be decreed to be the property of the libellants, and the possession be delivered to them, which would have been a strict foreclosure. The court decided that, sitting as a court of admiralty, it had not the authority to grant either prayer. It could neither order a sale, as in the case of maritime hypothecation, nor by a strict foreclosure, make a judicial transfer of the property. The court quoted and adopted the doctrine of Sir John Nichol, in the case

of The Neptune, 3 Hagg. Adm. 132, that the admiralty has no jurisdiction to decide on questions arising out of the mortgage of vessels between mortgagor and mortgagee. The mortgage of a vessel to secure the payment of a pre-existing debt, does not rest on a maritime consideration, nor is it made a maritime transaction by reason that the thing mortgaged is a necessary instrument in carrying on maritime commerce, and used exclusively for that purpose. It is as purely a land transaction, as the mortgage of any other chattel. It is not like the implied mortgage, or hypothecation of a maritime lien, when the consideration is purely maritime, as the lien of seamen for their wages; nor is it like the lien of material men, where the ship herself, in the view of the maritime law, is considered as a primary and principal debtor. In all these maritime hypothecations, there is some resemblance to a common mortgage. The creditor is considered as having a jus in re, a proprietary interest, in the things, but it is a qualified right of property. It is simply a right to be paid out of the thing, the res itself being treated as the debtor. The proper relief is that the thing be sold to pay the debt, and when that is paid, the thing is free. But with some points of resemblance, there is a clear and broad distinction. A mortgage is the conditional transfer of the whole property, and not of so much of it as is sufficient to pay the debt, and by a breach of the condition the title in law becomes absolute to the whole. Nothing remains in the mortgagor but an equity of redemption. But a marine hypothecation, whether express or implied, transfers to the creditor no more of the thing than the portion of his debt, and that is to be ascertained by a sale. (There is nothing known in the contract, as I understand it, like a proper foreclosure.) There is no other mode of carrying it into execution but by a sale. Such being the nature of a mortgage, and so broadly discriminated from the analogous security of a maritime hypothecation, and having nothing maritime in its consideration, the courts have held that the rights of parties under such a contract do not fall within the jurisdiction of the admiralty.

But it is argued by the counsel for the libellant, that the court having an unquestioned right to pronounce on the title to vessels, may decide other questions that arise as incident to the principal questions which, standing by themselves, are not properly of admiralty cognizance; as in this case, it may take notice of the alleged fraud, though the jurisdiction over fraud, in itself and simply considered, belongs to another tribunal. This, with proper limitations is undoubtedly true. But the difficulty in this case is, that the party in his libel admitting the whole to be true, has not shown a legal title, the only one that gives the court jurisdiction, but has shown at most an equitable right to have a legal title. Now, in order to have that title legal, the court must exercise the powers of

a court of equity, by compelling a conveyance. This it cannot do. If this were done, the court would have possession of the cause, and might proceed to consider whether it would take notice of the alleged fraud as incidental to the principal question. But until the court is in possession of the principal cause, it has no incident, and without encroaching on the exclusive jurisdiction of a court of equity, it cannot get possession of the cause. My opinion is, that the libel must be dismissed with costs.